## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRANZ H. PENNER, AS TRUSTEE OF THE )
VALLEY VIEW FARMS TRUST, )
       )
           **Plaintiff,** )
       )       **CIVIL ACTION**
**v.** )
       )       **No. 11-1059-KHV**
TOM VILSACK, SECRETARY OF THE UNITED )
STATES DEPARTMENT OF AGRICULTURE )
AND THE NATURAL RESOURCES )
CONSERVATION SERVICES, )
       )
           **Defendants.** )
_____)

## MEMORANDUM AND ORDER

Franz H. Penner, as trustee of the Valley View Farms Trust, brings suit against Tom Vilsack, Secretary of the U.S. Department of Agriculture ("Department" or "USDA"), and the Natural Resources Conservation Services ("NRCS"). Plaintiff seeks judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq. ("APA"). Essentially, plaintiff asks the Court to find that defendants have (1) failed to implement a final USDA determination that the Trust's property in Meade County, Kansas does not contain a certified wetland and (2) made an unauthorized new wetland determination regarding the property. This matter is before the Court on Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment (Doc. #6) filed June 9, 2011 and Plaintiff's Cross Motion For Summary Judgment (Doc. #13) filed August 5, 2011. For reasons set forth below, the Court sustains defendants' motion and overrules plaintiff's motion.

## Statutory and Regulatory Framework

This case involves provisions of the Food Security Act of 1985, 16 U.S.C. §§ 3801 et seq., commonly known as the "Swampbuster Act." Congress passed the Swampbuster Act to combat the

conversion of wetlands into crop lands.  See Gunn v. U.S. Dep't of Agric, 118 F.3d 1233, 1235 (8th Cir.

1997) (citing 16 U.S.C. § 3801).  The Swampbuster Act provides that farmers who produce a crop on

converted wetland are not eligible for federal farm benefits.  16 U.S.C. § 3821(a), (b).  In addition, the

act of converting a wetland renders an individual ineligible for farm benefits.  Id. § 3821(c).  The

Swampbuster Act exempts certain wetland conversion activities, including those which have only a

minimal effect on the wetlands.  Id. § 3822(f).  The Act provides that the Secretary of the Department

of Agriculture "shall delineate, determine, and certify all wetlands located on subject land on a farm."[1]

---

[1]      Section 3822(a) provides in full as follows:

(a) Delineation by Secretary
(1) In general
Subject to subsection (b) of this section and paragraph (6), the Secretary shall delineate, determine, and certify all wetlands located on subject land on a farm.
(2) Wetland delineation maps
The Secretary shall delineate wetlands on wetland delineation maps. On the request of a person, the Secretary shall make a reasonable effort to make an on-site wetland determination prior to delineation.
(3) Certification
On providing notice to affected persons, the Secretary shall--
(A) certify whether a map is sufficient for the purpose of making a determination of ineligibility for program benefits under section 3821 of this title; and
(B) provide an opportunity to appeal the certification prior to the certification becoming final.
(4) Duration of certification
A final certification made under paragraph (3) shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary.
(5) Review of mapping on appeal
In the case of an appeal of the Secretary's certification, the Secretary shall review and certify the accuracy of the mapping of all land subject to the appeal to ensure that the subject land has been accurately delineated. Prior to rendering a decision on the appeal, the Secretary shall conduct an on-site inspection of the subject land on a farm.
(6) Reliance on prior certified delineation

No person shall be adversely affected because of having taken an action based on a

(continued...)

The Swampbuster Act defines a wetland as follows:

The term "wetland", except when such term is part of the term "converted wetland", means land that –

(A) has a predominance of hydric soils;

(B) is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and

(C) under normal circumstances does support a prevalence of such vegetation.

16 U.S.C. § 3801(a)(27).  The Act sets out three components of a wetland: "hydric soil," "wetland hydrology" and "hydrophytic vegetation."  B & D Land & Livestock Co. v. Schafer, 584 F. Supp.2d 1182, 1196 (N. D. Iowa 2008).  The regulatory definition of a "wetland" is essentially identical to the statutory definition.  Compare 7 C.F.R. § 12.2 ("Wetland, except when such term is a part of the term 'converted wetland', means land that -- (1) Has predominance of hydric soils; (2) Is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and (3) Under normal circumstances does support a prevalence of such vegetation, except that this term does not include lands in Alaska identified as having a high potential for agricultural development and a predominance of permafrost soils.") with 16 U.S.C. § 3801(a)(27) (quoted above); see B & D Land, 584 F. Supp.2d at 1196.[2]

---

[1](...continued)
previous certified wetland delineation by the Secretary. The delineation shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by the person under paragraph (4).

[2]     At all pertinent times, the statute has provided that "[t]he Secretary shall develop . . . criteria for the identification of hydric soils and hydrophytic vegetation; and . . . lists of such soils and
(continued...)

The responsibility to administer the Swampbuster provisions rests primarily with two USDA agencies: the National Resources Conservation Service ("NRCS") and the Farm Service Agency ("FSA").   NRCS serves as the scientific agency, making technical determinations, developing restoration and mitigation plans and monitoring compliance with the statute.  16 U.S.C. § 3822(j); see also 7 C.F.R. § 12.6(c).  The FSA, acting through state FSA committees and county office committees, is primarily responsible for determining benefit eligibility and violations.  7 C.F.R. § 12.6(b).  Under the regulatory scheme, if the NRCS determines that a site contains a certified wetland, the land owner may appeal the determination to the FSA County Committee.  If the County Committee affirms the determination, the owner may appeal the determination to a National Appeals Division Hearing Officer. 7 U.S.C. §§ 6996-97.  If the NAD Hearing Officer upholds the wetlands determination, the landowner may request a Director Review of the Hearing Officer decision.  The Director must then review the determination of the hearing officer and issue a final determination notice that "upholds, reverses, or modifies the determination of the hearing officer."  7 U.S.C. § 6998.  If the Director determines that the hearing record is inadequate, the Director may "remand all or a portion of the determination for further proceedings" to complete the hearing record or to hold a new hearing.[3]  Id.

---

[2](...continued)
such vegetation," that is, for two of the three statutory requirements for a "wetland."  16 U.S.C. § 3801(b).   The statute does not expressly authorize the Secretary to develop criteria for the identification of the "inundation or saturation" requirement – the "wetland hydrology" requirement. Nevertheless, the Secretary has purported to develop criteria for the identification of all three of the statutory requirements for a "wetland."  See National Food Security Act Manual ("NFSAM"), Part 527 (3rd ed., amend. 5, Sept. 2000).

[3]        The Swampbuster Act provides that the Director shall complete the review and either issue a final determination or remand the determination not later than 30 business days after receipt of the request for review.  7 U.S.C. § 6998(a),(b).

**Standard and Scope of Review**

Under 7 U.S.C. § 6999, a final determination of the National Appeal Division "shall be reviewable and enforceable by any United States district court of competent jurisdiction" in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 701-06 ("APA"). See 5 U.S.C. § 704 (action must be "final" to be judicially reviewable); 5 U.S.C. §§ 706(2)(A), (C), (D). Under the APA, a final agency determination may be overturned on judicial review only if it is arbitrary and capricious, an abuse of discretion or otherwise contrary to law. See 5 U.S.C. § 706; see also Barthel v. U.S. Dep't of Agric., 181 F.3d 934, 937 (8th Cir. 1999); Downer v. United States, 97 F.3d 999, 1002 (8th Cir. 1996). This review entails a "searching and careful" de novo review of the administrative record to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Downer, 97 F.3d at 1002 (quoting Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989)). The ultimate standard of review, however, is a narrow one; the Court may not substitute its judgment for that of the agency. Id. The focus of the Court's narrow review is the administrative record already in existence, not some new record made initially before this Court. Camp v. Pitts, 411 U.S. 138, 142 (1973); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1575 (10th Cir. 1994).

**Factual And Procedural Background**

The following facts are undisputed, or where disputed, set forth in a light most favorable to each party.

As noted, Franz Penner is a trustee of the Valley View Farms Trust, which owns farmland in

Meade County, Kansas.[4] Tract 1401 of the Trust property contains a natural waterway on the southeast side.  Over time, tilling of Tract 1401 created dirt ridges, and the south ridge filled the natural waterway and caused ponding in a depression of the field.  In 2008, Penner decided to drain the depression on Tract 1401 by leveling the south ridge and using the dirt from the ridge to fill in the depression.  Penner's wife, Loretta Penner, as a trustee of the Trust, signed a request for NRCS to make a certified wetland determination.

On September 15, 2008, NRCS made a preliminary technical determination that Tract 1401 contained a wetland.  On September 25, 2008, Penner requested that NRCS reconsider its decision.  On October 9, 2008, an NRCS Area Wetland Team completed an on-site investigation.  Using on-site procedures, NRCS determined that the property contained a wetland, and Penner appealed that decision to the FSA County Committee.  On March 16, 2009, FSA notified Penner that it had found that NRCS followed recommended procedures and that the appeal did not have merit.  Penner appealed the FSA decision to the National Appeals Division.  On May 15, 2009, FSA withdrew its decision and Penner dismissed the NAD appeal.  On June 23, 2009, NRCS completed a second field visit with Penner and his attorney.  On June 26, 2009, NRCS sent Penner a letter which affirmed its original preliminary technical determination that the field contained a wetland.

On July 16, 2009, Penner requested that NRCS provide a Minimal Effects Determination ("MED").  An MED is an evaluation of the effects of conversion activities on a wetlands; if the effects are determined to be minimal, then NRCS will approve a minimal effect exemption for conversion activities.  16 U.S.C. § 3822(f)(1); 7 C.F.R. § 12.5(b)(1)(v).  On July 20, 2009, NRCS responded that

---

[4]        Penner's grandfather purchased Tract 1401 in the 1920s; the land has been used to produce crops for 80 years.

it could not issue an MED until it had made a final wetland determination.  On September 25, 2009,

NRCS issued a final technical determination that the land contained a wetland.  On October 27, 2009,

NRCS issued an MED determination which concluded that Penner's proposed action would lead to

drainage of 4.9 acres of wetland and would not constitute a minimal effect.  Penner appealed both the

final wetland determination and the MED.

On January 13, 2010, the NAD Hearing Officer held a hearing on Penner's appeal.  On May 7,

2010, the Hearing Officer upheld the NRCS finding that Tract 1401 contained a wetland and denying

an MED.  Id.  Penner then requested a Director Review Determination.

On August 23, 2010, the Deputy Director issued a "Director Review Determination."[5]  The

---

[5]        The parties' statements of facts attempt to characterize exactly what the Director
Review Determination actually found.  Defendants state that the Director

> reversed the HO's determination concerning the wetland[,] finding that there was
> insufficient evidence to show that NRCS followed its established procedures in
> rendering its wetland decision.  NRCS failed to record any primary or secondary
> hydrology indicator on the Field Data Worksheets.  Since[] there was a reversal of the
> wetland determination, the request for a MED was not ripe for decision.

Defendants' Brief (Doc. #7) at 9.  Plaintiff summarizes the same Director Review Determination as
follows:

> The Director found that there was not substantial evidence supporting the hearing
> officer's determination that there was a wetland.  The Director found that the evidence
> demonstrates that the Team did not record any primary or secondary hydrology
> indicators on the Field Data Worksheets it completed during the October 9, 2008
> on-site inspection.  The National Director rejected NRCS's claim that Appellant's land
> was so disturbed that it was impossible for NRCS to evaluate the presence of wetland
> hydrology and pointed out that the lack of observable hydrological indicators could
> also have been caused by a lack of current hydrology.  The National Director further
> concluded NRCS has an obligation to follow the regulations and its own handbooks
> and in this case, NRCS clearly did not do this.

Plaintiff's Response (Doc. #12) at 4.  These conflicting interpretations are at the heart of this case.

Director stated in part as follows:

> Appellant disputes the Hearing Officer's conclusion that the Natural Resources Conservation Service (NRCS) did not err when it issued (1) a final wetland delineation concluding that 4.9 acres of Appellant's land were wetlands and (2) a minimal effects exemption determination (MED) indicating that Appellant's desire to remove an earthern berm to more effectively drain its filed would not constitute a minimal effect on the wetlands.

> I reverse the Hearing Officer's determination as I have concluded upon review that it is not supported by substantial evidence.

Doc. #7-2 at 1.

After reviewing the procedural history, the Director cited the applicable statutes and regulations.

He then proceeded with an analysis section, which stated in part as follows:

> I [next] address the substantive issues on appeal.  Because I find that the NRCS erred in its evaluation of the wetland hydrology criterion when evaluating whether Appellant's land constituted a wetland, I conclude that NRCS has not properly shown a wetland exists.  As wetland hydrology is a dispositive issue in this case, I address it only; all of Appellant's other points are moot.

Id. at 9.  After reviewing the three-part test for a wetland, the Director stated the NRCS did not follow its procedures in determining the second prong – the wetland hydrology.  The Director then set forth the agency's approved procedure for evaluating wetland hydrology, and explained in detail how NRCS had performed the hydrology analysis.  See id. at 9-10.  The Director found that when evaluating plaintiff's land, NRCS did not follow its regulations and applicable handbooks, and that "[a]s result, NRCS's lack of effort to find any primary or secondary [hydrology] indicators does not provide the process Appellant is entitled to receive and does not fit within the analysis NRCS's own regulations require."

Id. at 11-12.  The Director then concluded as follows:

> Based on the evidence provided, I conclude that Appellant has shown by a preponderance of the evidence that NRCS erred in rendering its wetland determination. There is no evidence in the record to show it was impossible for NRCS to obtain wetland indicators or that by doing so, the results would be skewed or misleading.  As a result,

-8-

NRCS has not followed its procedures in evaluating Appellant's land.

Because I reverse the Hearing Officer's determination concerning the wetland determination, there is no need for me to address the second determination rendered by NRCS concerning the MED.  Because NRCS erred in rendering the wetland determination on Appellant's land, the issue of whether Appellant is entitled to an MED is not ripe.  I therefore reverse the Hearing Officer's determination on this point as well, as there is no wetland determination upon Appellant's land for which to request an MED.

### Conclusion

Based on the discussion above, I reverse the Hearing Officer's Determination.  I conclude that there is insufficient evidence to show that NRCS followed its established procedures in rendering its wetland determination on Appellant's land.

Id. at 12.[6]  The Director sent Penner's attorney a letter which stated that the determination "is a final order of the Department of Agriculture and concludes all administrative processing of this appeal." Doc. #12-2.

During the week of September 6, 2010 – shortly after he received the Director Review Determination – Penner directed the draining of the depression on Tract 1401 by leveling the man-made ridge on the south boundary line, using the dirt removed from the ridge to fill in the depression.

On September 9, 2010, Eric Banks, State Conservationist, sent a letter to Jesse Crockford, Assistant State Conservationist in Hutchinson, Kansas, together with a copy of the Director Review Determination.  The letter stated as follows:

The director concluded that the [NRCS] erred in their established procedures when making this wetland determination. . . .  As a result, this wetland determination is withdrawn. The NRCS will proceed and complete a new preliminary wetland determination.  The determination will be in conjunction with NRCS policy.

---

[6]      Based on the Director Review Determination, Penner, on behalf of the Trust, applied for attorney fees under the Equal Access to Justice Act.  On January 21, 2011 the Reviewing Officer granted attorney fees to the Trust, finding the Agency's position had no reasonable basis in law and fact and that the Agency's position was not substantially justified.  Plaintiff's Exhibit 4 at 4-6.

Doc. #7-2 at 13.

Meanwhile, on September 7 and 10, 2010, the NRCS Meade County, Kansas Field Office received whistleblower complaints that Valley View Farms Trust was diverting and draining a playa lake[7] on Tract 1401.[8] FSA regulations mandate that the NRCS investigate whistleblower complaints and document the findings pursuant to 7 C.F.R. § 12.30(a)(6). The regulations also direct NRCS to inform the complainant that it is investigating a complaint. 7 C.F.R. § 12.30(a)(6). NRCS therefore issued an FSA Form-569 – Natural Resources Conservation Service Report of Highly Erodible Land Conservation Compliance and Wetland Conservation Compliance.

On September 11, 2010, Banks received a letter from Penner's attorney. Doc. #7-2 at 14. The letter stated that "given the [NAD] decision is final, the agency does not have the trustees' permission to enter the land." Id. On September 13, 2010, the Meade County NRCS field office returned the FSA-569 Form to FSA with a notation that the owner had denied access to Tract 1401. On October 4, 2010, FSA informed plaintiff that the Meade County FSA Committee had determined that Valley View Farms Trust (and others) were ineligible for USDA program payments for 2010 and subsequent years until the FSA received a new Form AD-1026.[9] On October 7, 2010, Banks received a letter from Penner's lawyer which stated that "the Valley View Farms Trust is withdrawing effective immediately, the denial of permission to NRCS to enter [Tract 1401]." Doc. #7-2 at 18. On October 20, 2010, the

---

[7]    A playa lake is a round hollow in the ground which contains water at certain times of the year. See http://water.epa.gov/type/wetlands/playa.cfm.

[8]    Plaintiff states that it has no way to dispute this fact because the record of complaints is closed pursuant to 440 – Conservation Programs Manual 520.3.D.

[9]    FSA Form AD-1026 is a Highly Erodible Land Conservation ("HELC") and Wetland Conservation ("WC") Certification. This form certifies that USDA farm program participants (landowners and producers) are in good standing with HELC and WC provisions of the Food Security Act.

Meade County NRCS field office received a new Form FSA-569.  On October 22, 2010, the Meade County NRCS field office sent a letter to Penner on behalf of Valley View Farms, informing him of the receipt of the Form FSA-569 and inviting him to attend an on-site wetland determination.[10]  Doc. #7-2 at 20.

On October 28, 2010, the NRCS field office reviewed Tract 1401 site maps, aerial photography and soils information.  The offsite review identified two wetland areas, Site 1a and Site 2.  The offsite review indicated that Site 1a (5.294 acres) had met wetland hydrology factor requirements before the 2010 manipulation, but that Site 2 did not. The review also found that Site 1a met the soil and hydrophytic vegetation criteria for a wetland.  Thus, the NRCS field office found that Site 1a met all three criteria for a wetland.

On October 29, 2010, Hutchinson NRCS Area wetland staff visited the Tract 1401 to investigate the wetlands identified in the offsite review.  The wetland team discovered that Site 1a had recently been drained by the construction of a ditch and soil from the ditch had been placed in Site 1a.  The team identified potential wetland violations.  The Resource Soil Scientist found hydric soil indicators at Site 1a confirming the presence of hydric soil, but did not find hydric soil at Site 2.  Because the site had been ditched and filled, the wetland team relied on the offsite review to confirm wetland hydrology and vegetation for Site 1a.  The wetland team determined that Site 1a would have been a Farmed Wetland prior to the ditching and filling.  The wetland staff then conducted Minimal Effects Determination on Site 1a and found that the effects were greater than minimal and determined and labeled Site 1a as a

---

[10]     On October 26, 2010 the Trust's long-time renter gave notice that he was terminating his lease because the USDA had threatened to withhold government payments on any and all lands which the renter farmed.

Converted Wetland.

On January 4, 2011, Meade County NRCS sent Penner a Preliminary Wetland Determination letter, along with a Certified Wetland Determination Map.  Penner did not request mediation or reconsideration by NRCS.  Pursuant to 7 C.F.R. § 614.8(a)(1), the Preliminary Technical Determination thus became a Final Technical Determination.  See Doc. #7-2 at 21.  On March 7, 2011, Penner appealed to the USDA National Appeals Division the Final Technical Determination that Site 1a is a Converted Wetland.  Doc. #7-2 at 27.  That same day, Penner filed the present action.  On March 11, 2011, at Penner's request, the USDA National Appeals Division suspended plaintiff's agency appeal of the Converted Wetland determination pending the outcome of this case.

## Exhaustion Requirement

Section 6912(e) creates an exhaustion requirement for all suits brought against the Agricultural Department, or any office, officer, or employee of the Department.[11]  7 U.S.C § 6912(e); Kroskob v. U.S. Dep't of Agric., No. 09-1209, 2010 WL 1981013, at *3 (10th Cir. May 19, 2010); Farmers Alliance Mut. Ins. Co. v. Fed. Crop. Ins. Corp., No. 00-2347-JWL, 2001 WL 30443 (D. Kan. Jan. 3, 2001); see 5 U.S.C. § 704 (APA requires that plaintiffs exhaust available administrative remedies before filing suit in federal court).  The exhaustion requirement serves four primary purposes, as follows:

---

[11]      Section 6912(e) provides as follows:

   Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before  the person may bring an action in a court of competent jurisdiction against–
   (1) the Secretary [of Agriculture];
   (2) the Department [of Agriculture]; or
   (3) an agency, office, officer, or employee of the Department [of Agriculture].

7 U.S.C. § 6912(e).

First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of administrative processes [that] could . . . encourag[e] people to ignore its procedures." Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency.

Kroskob, 2010 WL 1981013, at *3 (quoting Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir. 1984)).

The courts of appeal are split as to whether 7 U.S.C. § 6912(e) is jurisdictional, and the Tenth Circuit has not ruled on the issue. See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 432 (10th Cir. 2011). Even if 7 U.S.C. § 6912(e) is not jurisdictional, however, the mandatory exhaustion requirement still applies. See id. (Regardless of whether it is jurisdictional, explicit exhaustion requirement in § 6912(e) is mandatory"); Farmers Alliance, No. 00-2347-JWL, 2001 WL 30443, at *2-3 (exhaustion requirement does not affect jurisdiction of Court, but suit subject to dismissal pursuant to Rule 12(b)(6) motion).

**<u>Analysis</u>**

Plaintiff asserts that the Director Review Determination of August 23, 2010 was a final agency decision that Tract 1401 did not contain any wetland. He argues that the NRCS had no authority to undertake a new wetland determination which resulted in a conclusion that Tract 1401 is a converted wetland.

Defendants argue that plaintiff has not exhausted administrative remedies with regard to the NRCS determination of a converted wetland. Defendants assert that they are therefore entitled to dismissal under Fed. R. Civ. 12(b)(1) for lack of subject matter jurisdiction or under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. In the alternative, defendants assert

that they are entitled to summary judgment for the same reasons.[12]

The parties agree that the Director Review Determination of August 23, 2010 was a final agency determination, but they disagree sharply as to exactly what it determined. Plaintiff contends that the Director made a final agency determination that Tract 1401 is not a wetland under the Swampbuster Act, and that the determination precluded the agency from undertaking a new wetland determination process. Defendants do not dispute that the decision of August 23, 2010 was "final." Defendants argue that the Director's Review Determination merely concluded that the agency had failed to follow proper procedures, however, and that the NRCS therefore properly withdrew its wetland determination and proceeded with a new preliminary wetland determination. In other words, defendants argue that the agency has not yet made a final determination as to whether Tract 1401 contains a wetland and thus plaintiff has not exhausted administrative remedies.

The Court has carefully parsed the Director Review Determination. After reviewing all of the administrative proceedings at length, the Director found that "NRCS erred in its evaluation of the wetland hydrology criterion when evaluating whether [plaintiff's] land constituted a wetland," and concluded that "the NRCS has not properly shown a wetland exists." Doc. #7-2 at 9. The Director then discussed in detail the primary flaw – that NRCS did not make any findings related to hydrology indicators – indeed, it "did not even attempt to gather hydrology indicator data" – thus "rendering use

---

[12]     In his cross-motion, plaintiff asserts that he is entitled to summary judgment declaring that (1) the Director Review Determination was a final determination that the agency did not show that Tract 1401 met the hydrology requirement to be a wetland, (2) the NRCS had no authority to withdraw the wetland determination and made a new determination, (3) the NRCS attempt to make a new wetland determination was arbitrary and capricious, (4) the NRCS is enjoined from making a new certified wetland determination unless specifically authorized, (5) the agency's actions in applying a whistleblower provision to review Tract 1401 after the Director Review Determination were arbitrary and capricious, and (6) Tract 1401 is exempt from the Swampbuster Act.

of a water budget analysis erroneous."  <u>Id.</u> at 11.  The Director went on to find that "NRCS's lack of
effort to find any primary or secondary indicators does not provide the process [plaintiff] is entitled to
receive and does not fit within the analysis NRCS's own regulations require."  The Director further
found as follows:

> Based on the evidence provided, I conclude that Appellant has shown by a
> preponderance of the evidence that NRCS erred in rendering its wetland determination.
> There is no evidence in the record to show it was impossible for NRCS to obtain wetland
> indicators or that by doing so, the results would be skewed or misleading.  As a result,
> NRCS *has not followed its procedures in evaluating Appellant's land.*"  Because I
> reverse the Hearing Officer's determination concerning the wetland determination, there
> is no need for me to address the second determination rendered by NRCS concerning the
> MED.  Because NRCS erred in rendering the wetland determination on Appellant's land,
> the issue of whether Appellant is entitled to an MED is not *ripe.*  I therefore reverse the
> Hearing Officer's determination on this point as well, as there is no wetland
> determination upon Appellant's land for which to request an MED.

Conclusion

> Based on the discussion above, I reverse the Hearing Officer's Determination.  I
> conclude that there is insufficient evidence to show that NRCS followed its established
> procedures in rendering its wetland determination on Appellant's land.

Doc. #7-2 at 12 (emphasis added).

Plaintiff argues that the Director made a final determination that the land *was not a wetland*.
Plaintiff primarily relies on the fact that the director did not explicitly remand the case for further
proceedings.  Defendants counter that the applicable regulation provides that the Director may remand
the case "to the *Hearing Officer* for further proceedings to *complete the hearing record,* or . . . to *hold
a new hearing*."  7 U.S.C. § 6998(a),(b) (emphasis added).  Defendants argue that the Director did not
remand because he had all of the information he needed to make a final determination that the agency
had committed procedural errors when it determined that the land was a wetland.  The agency thus takes
the position that the Director did *not* render a certified wetland determination – that he did not make a

-15-

final determination of "no wetland."  Rather, the agency asserts that the Director found that NRCS did

not follow its established procedures in rendering the wetland determination.  In support of this position,

the agency notes that the Director went on to state that "the issue of whether Appellant is entitled to an

MED is not *ripe*."  This language suggests that the Director anticipated further analysis whether Tract

1401 contained a wetland.[13]

Although the Court finds that the Director's Review Determination could have been more clear,

on the whole it appears to find that the NRCS procedure was flawed.  The agency undertook to

implement the decision by conducting a new wetland determination.  Ultimately, the NRCS made a

Final Technical Determination that Site 1a is a Converted Wetland.  That finding, however, is not a final

agency action, because on March 7, 2011, Penner appealed the Final Technical Determination to the

USDA National Appeals Division.  The National Appeals Division has not yet issued a ruling, and

therefore plaintiff has failed to exhaust administrative remedies.

Although Section 6912(e) does not contain any explicit exceptions to the exhaustion

requirement, judicially created exhaustion doctrines are subject to exceptions, McKart v. United States,

395 U.S. 185, 193 (1969), and several circuits have extended such exceptions to Section 6912(e).  See

Dawson Farms, LLC v. Farm Serv. Agency, 504 F.3d 592, 606 (5th Cir. 2007) (discussing

---

[13]     Defendants also point out that on September 7 and 10, 2010, NRCS received whistleblower complaints concerning plaintiff's property.  When it receives whistleblower complaints, agency regulations require the NRCS to investigate possible noncompliance and document the findings.  7 C.F.R. § 12.30(a)(6).  NRCS proceeded to investigate the whistleblower complaints.

Plaintiff argues that NFSAM did not require or allow NRCS to investigate the whistleblower complaints.  Plaintiff cites to NFSAM 520.4 A(ii) which provides that "[i]f a current Form AD-1026 has not been filed for the site, do not investigate."  Defendants counter that NFSAM 520.4 A(ii) does not apply here, however, because when the whistleblower complaints were filed in September of 2010, a current Form AD-1026 was in place.  Defendants further point out that the previous wetland determination was invalid, so no wetland determination was in place to indicate the status of wetlands on plaintiff's land.

"extraordinary circumstances" and "limited bases" warranting excuse of § 6912(e) administrative exhaustion requirement); Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d 992, 1000 (8th Cir. 2006) (exhaustion under § 6912(e) may be excused if complaint involves legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile or if issues primarily legal); McBride Cotton & Cattle Corp. v. Veneman, 290 F.3d 973, 980–82 (9th Cir. 2002) (excusing failure to exhaust under § 6912(e) where suit alleged colorable constitutional claim, collateral to substantive claim, and exhaustion would be futile).  The Tenth Circuit has never decided which of these exceptions, if any, apply to Section 6912(e)'s express direction regarding exhaustion of administrative remedies.  See Forest Guardians, 641 F.3d at 432 (not deciding whether exception available because no exception warranted on facts of case).  In any event, plaintiff has not identified any basis for the Court to excuse his failure to exhaust administrative remedies in this case.[14]

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment (Doc. #6) filed June 9, 2011 be and hereby is **SUSTAINED.  The case is dismissed for failure to exhaust administrative remedies.**

---

[14]        In the alternative, plaintiff briefly argues that when he completed work on the waterway, he detrimentally relied upon the Director's Review Determination of August 23, 2010. Plaintiff fails to offer any support for this proposition. Defendants note that detrimental reliance is a common element of several claims or doctrines, including promissory estoppel, equitable estoppel and fraud or misrepresentation.  See, e.g., Chrisman v. Philips Indus., Inc., 242 Kan. 772, 780, 751 P.2d 140, 146 (1988) (promissory estoppel); Turon State Bank v. Bozarth, 235 Kan. 786, 788, 684 P. 2d 419, 422 (1984) (equitable estoppel); Coffman v. Lien Enters., Inc., 16 Kan. App. 2d 140, 146, 827 P.2d 68, 72 (Kan. Ct. App. 1991) (fraud and misrepresentation).  Defendants assert that NRCS implemented the Director's decision by withdrawing the incomplete determination on September 9, 2010 – within 30 days from the date of the decision – pursuant to 7 C.F.R. § 11.12.  Defendants' Exhibit A ¶ 4, Exhibit A-2.  Plaintiff did his "restoration work" prior to the 30 days which the regulations allow for the NRCS to implement the Director Review Decision.  The Court finds that plaintiff has not shown a legal basis to support his detrimental reliance theory or any of the other equitable doctrines.

**IT IS FURTHER ORDERED that** Plaintiff's Cross Motion For Summary Judgment (Doc. #13)

filed August 5, 2011 be and hereby is **OVERRULED**.

Dated this 15th day of December, 2011 at Kansas City, Kansas.

s/Kathryn H. Vratil
Kathryn H. Vratil
United States District Court